Wetherbee *v.* Baker.

AMOS WETHERBEE

*v.*

EDWARD P. BAKER and others.

Under the Land Improvement Act (*Rev. p. 567*), payment for the stock of any corporation organized thereunder may be made either in money or land. Five persons bought a tract of land, paying therefor $50,000, a part being the bond and mortgage for $25,000 of their corporation, afterwards organized. They conveyed it to the corporation for $100,000, thereby giving themselves credit for $50,000, or fifty per cent. of the capital stock ($100,000), the resolution stating that the company took the lands subject to a mortgage of $50,000. No money was ever paid on account of the stock subscribed, the five persons being equal corporators. The holder of the bond, the mortgagee, recovered a judgment against the corporation thereon, and, on bill filed in chancery for relief,—*Held*, that, in order to satisfy such judgment, the stock was assessable to the extent of fifty per cent. of its par value, and that a release of one of the corporator's liability on the stock subscribed by him by the agent of the mortgagee, who, however, had no authority except to sell the land, and made such release without the authority or knowledge of his principal, was only binding as an indemnity on such agent, and not on the principal.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. W. C. Spencer* and *Mr. B. Williamson,* for complainant.

*Mr. J. H. Stone* and *Mr. J. D. Bedle,* for defendants.

THE CHANCELLOR.

This suit was brought by Amos Wetherbee against Edward P. Baker, Samuel Carpenter, George W. Barker, Charles F. Branne and George D. Howell, the five subscribers to the stock of the Linden Land and Improvement Company, a corporation under the act " to encourage the improvement of real property in this state " (*Rev. p. 567*), to obtain satisfaction of a judgment recovered against the

company by the complainant, in the supreme court of this state, January 6th, 1877, for $28,245.72, upon the company's bond, given to him. Barker died after this suit was begun, and it was revived against his executors. The land of the company was situated in Linden township, in Union county, and the certificate of incorporation was filed in the clerk's office of that county, February 27th, 1875. By it the amount of the capital stock was fixed at $100,000, and declared to be held by the five corporators in equal amounts, each four hundred shares. The company's land was stated in the certificate to be in Linden. It was a tract of about thirty-seven acres, conveyed to it by the complainant, by deed dated March 3d, 1875, for the consideration of $50,000, subject to a mortgage thereon for $10,000, called the Stiles mortgage, allowed as so much of the purchase-money and assumed by the company accordingly. For the balance of the consideration, three bonds, in the aggregate for $40,000, were given, one for $25,000 and interest, to the complainant, and the other two for $10,000 and $5,000, respectively, and interest, to Franklin Post. The payment of each of these bonds was secured by a mortgage on the property, and the mortgages were concurrent liens.

The complainant's judgment was recovered on the bond given to him. By the by-laws, the capital stock was payable half on or before April 1st, 1875, and the balance at the call of the directors. Nothing was ever paid on account of the stock, but the land bought of the complainant was taken by the company for fifty per cent. thereof, that is, it was put in at an appraisement of $100,000. It cost, as already appears, but $50,000. There were never but two meetings of the board of directors. One was on the 25th of February, 1875 (before the date of the deed from the complainant to the company), and the other on the 29th of March following. At the former meeting a resolution was adopted providing for the payment of half of the stock by the conveyance of the land. The preamble to the resolution states that the corporators were the equal owners, in undivided shares, of

the tract of land above mentioned, stated in the preamble to contain about thirty-seven acres, and to have been then recently owned by the complainant, which they were desirous of conveying, or causing to be conveyed, to the company, as payment in part of their respective subscriptions to the capital stock of the company, and that the latter was willing to accept it, and the resolution thereupon declared that the tract of land was appraised at $100,000, and that the company would take it, subject to mortgages amounting to $50,000, and accept the balance of $50,000 as a payment of fifty per cent. of the amount of the capital stock subscribed by the corporators, provided the title to the land and the conveyances thereof should be approved by legal counsel; and the resolution authorized the president and secretary, on such approval, to execute and deliver, under the seal of the company, the bonds and mortgages for $40,000 of purchase-money, and the agreement to assume the $10,000 mortgage (the Stiles mortgage), subject to which the property was to be conveyed. The deed for the land was made by the complainant to the company accordingly, the title having been examined and approved by the counsel of the company, and the deed was recorded March 31st, 1875. There are no other creditors of the company except Wetherbee and Post, or whoever holds the bonds given to the latter.

On the foregoing statement, it is quite clear that an obligation rests upon the stockholders to pay so much of fifty per cent. of their shares as may be necessary to pay the complainant's debt. It is claimed by the complainant that their liability is still greater, and is to the extent of the whole amount of the stock, because it does not appear that there was any value in the property above the amount of the purchase-money. But the act provides that payment for the stock of such companies shall be made either in money or land situated in places named in the certificate (in this case the place named is Linden township), the land

to be appraised by the board of directors, and taken by the company on such terms as may be agreed upon.

The complainant, of course, knew he was dealing with the company. He conveyed to it, and took its obligation to pay the purchase-money. He knew, or might have known (for it was on the minutes), that fifty per cent. of the amount of the stock was to be paid in the land at an appraisement of $100,000. He has no right to complain of the action of the company in this respect.

The only defendants who have answered are Carpenter, Branne and Barker. By their answer, they set up the defence of fraud on the part of the complainant, alleging that the sale of the property was made to them and their associates (and through them to the company), by Post, who was, as they say, a near relative and confidential friend of the complainant. They state that Post pretended to own the property, and said that the complainant merely held the title in trust for him; and they allege that he, by his misrepresentations and assurances, induced them to enter into the enterprise of forming the company to speculate with the property; that specifically those misrepresentations were, that he owned the property, and the complainant did not; that he had received assurances that a change would be made by the Pennsylvania Railroad Company of the location of its depot at Linden, from the place where it then was to a place immediately adjacent to these lands, and that Ferdinand Blancke, a man of influence in Linden, and having very considerable landed estate there, which would be affected by the change, was favorable to it, and that he (Post) would take a large share in the enterprise, at least one-tenth of the stock. And they allege that he assured them that no personal liability would attach to them, but that the company might issue obligations, to which and its property alone recourse would be had by the holders of the obligations, for the satisfaction thereof, and they say that they distinctly and expressly refused to enter into negotiations with him in regard to the enterprise, until he agreed

to rely on the property and its prospects for a successful career alone, for the payment of the bonds given for the purchase-money. They further say that the representations of Post as to the intention to remove the depot were untrue, as was also his statement that Blancke was favorable to the change, and allege that, on the contrary, he was, in fact, violently opposed to it. Claiming that they have paid by the property one-half of their subscriptions, they insist that they still have the right to pay the remaining half in land or money, as the board of directors shall direct, and that they ought not to be deprived of that right. In addition to those matters, the answer sets up, in behalf of Barker, that there was an agreement in writing between him and Post, dated February 24th, 1875, by which the latter acknowledged that the signing of the certificate of incorporation by the former was done to meet the requirement of the law (the act requires that there should be at least five corporators), and agreed to release him and his heirs and assigns from all pecuniary responsibility whatever, and to indemnify him as to all payments; which instrument, the answer insists, releases and exonerates Barker from all liability to the complainant.

The proof does not sustain the allegations of the answer, except as to the giving of the written instrument just mentioned. The enterprise appears to have been a land speculation, undertaken at the instance (and probably on the urgent application) of Post, who was the complainant's agent for the sale of the land. Part of the land (probably the largest part, for he says he bought all the land of Post but about one acre, at the first purchase) was conveyed to the complainant by Post in 1872, and part in March, 1875. The former swears that he purchased the land from the latter, and gave him $22,500 for it, paying $7,500 in cash, and for the rest assuming two mortgages for $15,000, together, which were on the property; that he bought the property after an examination of it, and consultation with persons living at or near Linden. He says the first time

he was there to see the property he saw Mr. Stiles, Mr. Button, J. C. Rose, Meeker Wood and Mr. Blancke, and talked with several of them about purchasing property there; that he bought the property with the expectation of moving there, and packed up his goods with that intention, but his family became dissatisfied, and he consulted his physician on the subject, and, having heard that Linden was not a healthy place, decided not to go. He swears that Post retained no interest in the property, and has had none in it since; that he did not, till some time after the conveyance had been made, know that Post had caused any of the bonds and mortgages to be made to himself. Though he appears to have signed an instrument, dated March 6th, 1875, providing for waiver of interest for two years if a depot should be built on the property, and for the release from the mortgages of the requisite land for the depot, in which it is stated, not only that two of the mortgages were given to Post, but that the property was sold to the company by Post and himself, and appears not to have acknowledged the execution of it until April 5th, 1875, yet he says he did not know its particular contents when he signed it. He says that Post asked him to let him have some of the bonds to help him, and he wrote to him that he might have them, and Post sent him his note for them; but he adds that he did not authorize Post to have the bonds made in his (Post's) name, and that Post had no business to do it. He further says that there was, at one time, an agreement in writing between him and Post, that he would reconvey the property to the latter, provided the latter should, within one year, pay him all that the property had cost him, but that at the end of the year, Post having failed to pay, the agreement was cancelled. He says Post was his agent to sell to the company, but only according to his instructions; that he understood that the company was to pay off the Stiles mortgage, and that he did not know, when he sent the deed to the company, that it was not bound to do so.

Wetherbee *v.* Baker.

As to none of the defendants, except Barker, is there any evidence of any undertaking to protect them against liability on account of their subscriptions to the stock, and as to him the agreement made by Post with him was the individual agreement of Post to indemnify Barker, and while it would protect the estate of the latter against any claim on the part of Post, it will not protect it against the claim of the complainant. It does not even appear that the complainant knew of it, and if he did know of it, it does not appear that it ought to estop him from making claim against Barker's estate. Barker must have known that the complainant held the title to the land. The search of the records showed it. The deed showed it. The resolution of the board of directors, moved by Branne and seconded by Barker, expressly stated it. The fact appears to have been that the enterprise was understood, by the parties to it, to be dependent for its success on the change of the location of the Linden depot of the Pennsylvania Railroad. The corporators were all either connected with the Pennsylvania Railroad Company or its business, or connected with those who did business for it. When, after the land had been conveyed to the company, it was found that the contemplated change of location of the depot could not be effected, because of the opposition which was made to it by persons interested in keeping it where it was, the whole enterprise was at once abandoned.

On the face of the papers, and according to law, the defendants are clearly liable to pay the balance of their subscriptions to the stock, so far as necessary to pay the complainant's debt. They have not shown enough to justify a denial of the complainant's right to the relief which he seeks. It is not necessary to discuss their claim to a right to pay the balance of their subscriptions in land or money, and at such times as the board of directors shall direct. There has been no meeting of the board for more than five years. There never was any after the project of changing the location of the depot was abandoned.

The complainant is authorized to maintain this suit for his own benefit alone for the payment of his debt. There will be a decree accordingly, requiring the payment of so much of the unpaid subscriptions to the stock as shall be necessary to pay the complainant's debt and interest, and the defendants will be required to pay the costs of this suit.